UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 1:08-CR-37 |
| JONATHAN N. DILLEY | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court for a final sentencing hearing in the above-captioned cause. On May 22, 2009, the Court held a sentencing hearing wherein the Court heard argument and any evidence the parties sought to present regarding sentencing with respect to both the defendant's objection to the guideline calculation and the defendant's request for a below-guideline's sentence. Thereafter, on June 3, 2009, the undersigned entered a written order granting the Defendant's objection to the advisory guidelines range and determining the appropriate range to be 57-71 months. On June 5, 2009, the court held a final sentencing hearing wherein the Government and the defendant were provided a final opportunity to present arguments on the appropriate sentence in this case.

The facts of this case were previously set out in the June 3, 2009 Order. The crux of the offense conduct is that Defendant Dilley, operating under a tax protester scheme known as "redemption," created fictitious money orders and sight drafts to pay various personal obligations and to attempt to purchase real property. Dilley believed that he had access to a treasury account linked to his birth certificate and, like all persons undertaking the redemption theory, Dilley

1

undertook the process of drawing on his account (redeeming his birth certificate) through use of fictitious promissory notes and sight drafts he created.[1] No actual loss occurred as a result of his conduct but this Court has previously calculated the intended loss to be in excess of $804,000.

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), held that the Guidelines were to be advisory, and the Court's more recent decision in *Rita v. United States*, --- U.S.

---

[1] Perhaps the theory is best explained in *Bryant v. Washington Mutual Bank*, 524 F Supp.2d 753 (W.D.Va. 2007):

> The foundation of Plaintiff's claim is equal parts revisionist legal history and conspiracy theory. Supposedly, prior to the passage of the Fourteenth Amendment, there were no U.S. citizens; instead, people were citizens only of their individual states. Even after the passage of the Fourteenth Amendment, U.S. citizenship remains optional. The federal government, however, has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship. However, the government cannot hold the profits it makes from this use of its citizens and their property in the general fund of the United States because doing so would constitute fraud, given that the profits technically belong to the actual owners of the property being pledged (i.e., the real people represented by the fictitious entities). Therefore, the government holds the profits in secret, individual trust accounts, one for each citizen.
>
> Because the populace is unaware that their birth certificates and such are actually contracts with the government, these contracts are fraudulent. As a result, the officers of government are liable for treason unless they provide a remedy that allows an individual to recover what she is owed-namely, the profits held in her trust account, which the government has made from its use of her and her property in the commercial markets. In 1933, the government provided just such a remedy with House Joint Resolution 192, and the Uniform Commercial Code (UCC) provides the means for a person to implement it. The fact that virtually no one is aware of this remedy or how to use it is all part of the government's scheme-if no one takes advantage of the remedy, the government can keep the money, so it is in the government's interest that the remedy be obscure. However, one such as Plaintiff, who learns of and is able to implement the remedy, can supposedly use the debt owed to her by the government to discharge her debts to third parties with Bills of Exchange that are drawn on her trust account.

*Id.* at 758-759.

----, 127 S.Ct. 2456(2007), confirms that, as far as the sentencing court is concerned, the guideline range is simply one of the several factors listed in 18 U.S.C. § 3553 that must be considered in arriving at a just sentence, "sufficient, but not greater than necessary," to meet the traditional purposes of criminal sentences.[2] See, *United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir.2006) (explaining that the district court's job is not to impose a "reasonable" sentence, but to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2)). Thus, a sentencing judge must make "an *independent* determination of what sentence is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a) ... taking into account the advisory Guideline range, the relevant § 3553(a) factors, and any other nonfrivolous arguments presented in support of a particular sentence." *United States v. Wilms*, 495 F.3d 277, 282 (6th Cir.2007) (emphasis in original).

A district court is required to engage in a two-part sentencing procedure. First, the sentencing judge must be assured that the Guidelines sentence is properly calculated. After calculating the Guidelines range, a district court must give both parties an opportunity to argue for whatever sentence they deem appropriate, and then consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by a party. *Gall v. United States*, 128 S.Ct. 586, 596 (2007); *United States v. Dale*, 498 F.3d 604, 611-12 (7th Cir.2007). This court has already upheld Dilley's objection to the calculation of the advisory guideline range and reduced his range pursuant to that objection from 135-168 months to 57-71 months. The remainder of this Order

---

[2]This is known as the "parsimony provision."

addresses the arguments for a below guidelines sentence raised by Dilley and his stand-by counsel.[3]

In imposing the ultimate sentence, the district court must consider all of the factors set forth in § 3553(a). *United States v. Harris*, 490 F.3d 589, 593 (7th Cir.2007). Those factors include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)  the need for the sentence imposed-
  (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B)  to afford adequate deterrence to criminal conduct;
  (C)  to protect the public from further crimes of the defendant; and
  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)  the kinds of sentences available;
(4)  the advisory guideline range;
(5)  any pertinent policy statements issued by the Sentencing Commission;
(6)  the need to avoid unwarranted sentence disparities; and
(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, consideration of several of the above factors greatly influence this court's decision relating to the appropriate sentence imposed. First, looking at the nature and circumstances of the offense, it is clear that Dilley did in fact commit a serious criminal offense by attempting fraudulently and intentionally to draw on funds from the United States Treasury to pay off his creditors. As set out above, the offense in this case involved Dilley creating and presenting false documentation which attempted to draw on funds from the United States Treasury to various

---

[3] Throughout his case Dilley has been adamant about two propositions. First, he adheres to the belief that this Court has no jurisdiction to impose any criminal penalty upon him, or to prosecute him for any offense. Secondly, he has consistently and over the advice of the undersigned, refused to utilize the services of stand-by counsel to aid in his defense. Dilley conducted his own trial proceedings with stand-by counsel present. Stand-by counsel did, at the Court's request, file a brief relating to the sentencing issues before the court after it became clear that Dilley was without a basic understanding of the sentencing procedure or the fact that his sentencing range was 135-168 months.

4

government agencies, corporations, and to private individuals. Although the intended loss was originally designated by the probation officer to be in excess of $22,000,000, that estimate well overstates the offense in this case. Certainly, as the Government points out, there was some element of deception in what Dilley did although the evidence at trial demonstrated that Dilley did not hide what he was doing in an effort to actively dupe any of the recipients of his documents. In fact, the evidence at trial was that Dilley took these falsified documents directly to the Internal Revenue Service in an effort to pay off certain accounts. And, ultimately, the amount of actual loss was zero. Indeed, not one entity or individual received any value for the false documents created by Dilley and thus, while Dilley's actions are criminal and he intended there to be a loss, there is no evidence that any injury resulted from his actions. And, the notations and misuse of legal jargon on the documents combined with the rationale upon which Dilley relied to justify his conduct is so far-fetched that no reasonable person would believe it to be legitimate. Given these facts, the court believes that a sentence, even at the low end of the guidelines,[4] is excessive given the offense conduct in this case.

However, the extent of the variance from the guidelines is dictated, at least in the view of the undersigned, by the need for the sentence imposed to promote respect for the law, and to provide just punishment for the offense. Throughout these proceedings, Dilley has exhibited a general mistrust of the criminal justice system and the laws of this country. His offense is based upon a taxpayer protest theory which further exhibits his belief that the laws of this country are inapplicable to him. Dilley has filed numerous documents objecting to this court's jurisdiction over him, and has generally raised what he terms "moral objections" to the entire judicial proceeding. At certain points

---

[4] The court acknowledges that the guidelines are only one factor in the calculation of the sentence and having reviewed the guidelines calculation, the court concludes that the range is an appropriate starting point for the sentence in this case.

5

during this case, Dilley has refused to acknowledge the authority of the United States government or the court. That said, while Dilley is persistent in his beliefs, Dilley has displayed an appropriate level of respect to the undersigned, the jury who heard his case, and, as far as this court can ascertain, to his court-appointed stand-by counsel, although it is evident that Dilley has declined any assistance from him. One of the key inquiries made by this Court to Dilley was whether he intended to continue perpetrating these sorts of crimes in the future. In his filing, Dilley writes that he gives "his word of honor never to execute [fictitious financial instruments]...ever again." The court questioned Dilley at length during the sentencing hearing as to whether he intended to continue this sort of conduct if he received a reduced sentence and while Dilley did concede he would not repeat the offense conduct, he has persisted in his odd behavior in front of the undersigned, proclaiming in response to the court's questions that he merely seeks "truth and universal peace with mankind." Thus, the court believes that while a variance is appropriate, it will be limited to ensure that the sentence imposed ultimately promotes respect for the law.

As for Dilley's personal characteristics, it comes as no surprise to the undersigned that Dilley refused any opportunity to provide information to the probation officer concerning his personal characteristics and history. The probation officer did retrieve information from other sources and so, the record shows that Dilley has a young son that he is obligated to support, he has maintained employment in various ways for his adult life and thus, has the opportunity to provide the support for his son. However, neither Dilley or stand-by counsel has made any argument that these factors warrant a variance and, without more details, these facts are not persuasive to the undersigned.

Dilley does, however, have two prior convictions (a battery conviction and a robbery by force conviction) that are of some concern, although these two offenses were committed in excess

of ten years ago when Dilley was in his late teenage years. Since that time, Dilley has had two additional encounters with police, one of which involved a battery on a police officer during a domestic disturbance, but the results are that he only received two criminal history points arising from those encounters. These encounters, however, solidify the court's finding above that only a small variance from the guidelines is appropriate in this case. Dilley clearly has a history of disrespecting the law and those charged with enforcing it and thus, the sentence in this cause must carefully reflect and encourage respect for the law.

Accordingly, having considered the remaining factors set out in §3553, including the advisory guideline range, and the arguments made at the sentencing hearing, the court concludes that a sentence of 76 months followed by 3 years of supervised release constitutes a just sentence, that is, one that is sufficient but not greater than necessary to comport with the traditional purposes of criminal sentencing

## Conclusion

Based on the foregoing, the Defendant's request for a variance from the advisory guidelines range is GRANTED.

Entered: This 5th day of June, 2009.

s/ William C. Lee
s/ William C. Lee
United States District Court